IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UPLIFTING ESSENTIALS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>Defendants. | No. 2:26-cv-00027 |

## COMPLAINT

Plaintiff Uplifting Essentials LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for trademark infringement and false designation of origin under the Lanham Act against the Partnerships and Unincorporated Associations Identified in Schedule "A"[1] (together, "Defendants"). In support hereof, Plaintiff states as follows:

### I.   JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Trademark Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Indiana, through their operation of or assistance in the operation of the fully interactive, commercial internet stores

---

[1] Schedule A lists Defendant's identifying information (Merchant Name, Merchant ID, Product ID) and the corresponding use of Plaintiff's Intellectual Property.

1

operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Indiana residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell counterfeit products infringing Plaintiff's federally registered trademarks directly to Indiana consumers. In short, each Defendant is committing tortious acts in Indiana, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Indiana.

## II.　　INTRODUCTION

3.　　Plaintiff filed this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademarks SKINNIES (Reg. No. 5,868,214), INSTANT LIFTS (Reg. No. 4,267,225), and INSTANT THIGH LIFT (Reg. No. 3,629,493) (collectively the "INSTANT LIFTS Trademarks"). *See* **Exhibit 1**. The Defendants created internet stores (the "Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine copies of Plaintiff's products, when in fact, the Stores are selling counterfeit versions to unknowing customers.

4.　　The Defendant Internet Stores share unique identifiers, such as similar design elements of the infringing product offered for sale and, on information and belief, these similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their

counterfeiting operation, including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing infringing products over the internet. Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged both through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions.  Accordingly, Plaintiff seeks injunctive and monetary relief.

### III.   THE PARTIES

**Plaintiff Uplifting Essentials LLC**

5.     Plaintiff is a Washington limited liability company based in Spokane, Washington, and is the manufacturer, distributor, and seller of a line of innovative personal care products designed to enhance skin appearance and promote body confidence (the "INSTANT LIFTS Products"). Founded by Penilopee LaRosa, the company developed its flagship product in response to her personal experience with skin sagging and cellulite during pregnancy, ultimately leading to the creation of a dermatologist-tested, patented adhesive tape that lifts and firms the skin invisibly under clothing. Since its launch in 2007, Plaintiff has expanded its offerings to include a line of targeted body solutions that help women enhance their appearance and confidence without resorting to surgery or gimmicks.

6.     Among Plaintiff's most important assets is the intellectual property associated with its INSTANT LIFTS brand. Specifically, Plaintiff is the assignee and owner of several U.S. trademark registrations used to identify innovative adhesive skin-lifting products and related goods that it markets, sells, and licenses. Plaintiff distributes and retails these high-quality products within Indiana under the federally registered trademarks SKINNIES (Reg. No. 5,868,214),

INSTANT LIFTS (Reg. No. 4,267,225), and INSTANT THIGH LIFT (Reg. No. 3,629,493). Defendants' sales of the counterfeit items in violation of Plaintiff's trademark rights are irreparably damaging Plaintiff.

7. The registrations for the INSTANT LIFTS Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the INSTANT LIFTS Trademarks pursuant to 15 U.S.C. § 1114. The INSTANT LIFTS Trademarks have been continuously used and never abandoned since their first use.

8. Plaintiff's INSTANT LIFTS Trademarks have been used in the United States in connection with the advertisement, design, distribution, and offer for sale of its INSTANT LIFTS Products. The INSTANT LIFTS Trademarks have become synonymous with the company's exacting quality standards. The unique designs of the INSTANT LIFTS Products have achieved substantial popularity and recognition. Since its establishment, Plaintiff has introduced several variations of designs through its various e-commerce marketplaces and authorized retailers worldwide, including in the United States and Indiana. Plaintiff's unique products have been advertised with its federally registered trademarks. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, advertisements, and product demonstration videos to educate consumers on both its products and trademarked name. Its websites and social media feature original content, reviews, and testimonials for the INSTANT LIFTS Products.

9. Plaintiff sells its genuine INSTANT LIFTS Products through the Company's website[2], Amazon[3], and licensed distributors. The INSTANT LIFTS Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards. Among the

---

[2] https://skinniesinstantlifts.com/collections/all
[3] https://www.amazon.com/s?me=A29KVMFH08ZYEK&marketplaceID=ATVPDKIKX0DER

4

purchasing public, genuine INSTANT LIFTS Products are instantly recognizable as such. In the United States and around the world, the INSTANT LIFTS brand has come to symbolize high quality, and INSTANT LIFTS Products are among the most recognizable in the United States.

10. The INSTANT LIFTS Trademarks are exclusive to Plaintiff and are displayed extensively on INSTANT LIFTS Products and in Plaintiff's marketing and promotional materials. The INSTANT LIFTS Products have long been among the most popular products of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Plaintiff has been advertising, promoting, and marketing featuring the INSTANT LIFTS Trademarks.

11. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the INSTANT LIFTS Trademarks. As a result, products bearing the INSTANT LIFTS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality skin-lifting products sourced from Plaintiff. The INSTANT LIFTS Products have become among the most popular of their kind in the U.S. and the world. The widespread fame, outstanding reputation, and significant goodwill associated with the INSTANT LIFTS brand have made the INSTANT LIFTS Trademarks invaluable assets of Plaintiff.

**The Defendants**

12. Defendants are unknown individuals and entities who conduct business throughout the United States, including within the state of Indiana and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations.

Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b). Each Defendant targets the United States, including Indiana, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Indiana, and in this Judicial District.

13. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto, and design these stores to appear to be selling genuine INSTANT LIFTS Products, while they actually sell inferior imitations of Plaintiff's INSTANT LIFTS Products, and/or to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV.   THE DEFENDANTS' UNLAWFUL CONDUCT

14. The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Consequently, Plaintiff has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms such as, but not limited to, Alibaba, AliExpress, Amazon, CJdropshipping, eBay, Fruugo, Shein, Shopify, Temu, and Walmart including the e-commerce stores operating under the Seller Aliases and which have been offering for sale, completing sales, and exporting counterfeit products to consumers in this Judicial

District and throughout the United States. Defendants have persisted in creating the Defendant Aliases.

15. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizure, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo environment occurred in de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

16. Groups of counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and also communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

17. Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use

false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Indiana residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Indiana, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Indiana.

18.　　Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the INSTANT LIFTS Trademarks, including its exclusive right to use and license such intellectual property and associated goodwill. Defendants' Internet Stores also use the same pictures to advertise their infringing product that Plaintiff uses on its webpage and other online marketplaces to sell and advertise its genuine and original INSTANT LIFTS Products, sowing further confusion among potential purchasers.

19.　　Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal

their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

20. The infringing products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

21. Upon information and belief, Defendants also deceive unknowing customers by using the INSTANT LIFTS Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's INSTANT LIFTS branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores' listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

22. Defendants' use of the INSTANT LIFTS Trademarks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the infringing products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

23. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the INSTANT LIFTS Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the internet. The infringing products are not INSTANT LIFTS Products of the Plaintiff. Plaintiff did not

manufacture, inspect, or package the infringing products and did not approve the counterfeit products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Indiana, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Indiana.

24. Defendants' use of the INSTANT LIFTS Trademarks in connection with the advertising, distribution, offer for sale, and sale of infringing products, including the sale of infringing products into Indiana, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

25. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon the INSTANT LIFTS Trademarks unless preliminarily and permanently enjoined.

## COUNT I

### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

27. This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered INSTANT LIFTS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The INSTANT LIFTS Trademarks are distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products offered, sold, or marketed under the INSTANT LIFTS Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the INSTANT LIFTS Trademarks without Plaintiff's permission.

29. Plaintiff is the exclusive owner of the INSTANT LIFTS Trademarks. Plaintiff's United States Registrations for the INSTANT LIFTS Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the INSTANT LIFTS Trademarks and are willfully infringing and intentionally offering counterfeit items bearing the INSTANT LIFTS Trademarks. Defendants' willful, intentional, and unauthorized use of the INSTANT LIFTS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

32. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's INSTANT LIFTS Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

33. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34. Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

35. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have offered and shipped goods in interstate commerce.

36. Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have and continue to trade on the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

37. Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

38. By using Plaintiff's trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product. By their use of Plaintiff's original photographs

in association with the offer and sale of the counterfeit products, Defendants seek to further confuse the relevant public as to the source or sponsorship of their goods by Plaintiff.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

41. Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of its brand if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

   i. Using the INSTANT LIFTS Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with the INSTANT LIFTS Trademarks;

   ii. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from the INSTANT LIFTS Trademarks;

iii.     Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe the INSTANT LIFTS Trademarks;

iv.     Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including, without limitation, through use of Plaintiff's original photographs and texts in connection with the offer or sale of counterfeit products;

v.     Further infringing the INSTANT LIFTS Trademarks and damaging Plaintiff's goodwill;

vi.     Otherwise competing unfairly with Plaintiff in any manner;

vii.     Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

viii.     Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

ix.     Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the INSTANT LIFTS Trademarks or any reproduction, counterfeit copy, or colorable imitation

thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the INSTANT LIFTS Trademarks; and,

  x. Registering any additional domain names that use or incorporate any portion of the INSTANT LIFTS Trademarks; and,

 B. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  i. Displaying images protected by the INSTANT LIFTS Trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the INSTANT LIFTS Trademarks; and

  ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the INSTANT LIFTS Trademarks, or any reproductions, counterfeit copies, or colorable imitation thereof; and,

 C. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

 D. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including Alibaba, AliExpress, Amazon, CJdropshipping, eBay, Fruugo, Shein, Shopify, Temu, and Walmart;

15

payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the INSTANT LIFTS Trademarks shall:

    i.    Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiff's trademarks, including any accounts associated with the Defendants listed on Schedule A;

    ii.    Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's trademarks and;

    iii.    Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E.    That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.    For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's trademarks in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademarks;

I. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J. That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.

Dated: January 23, 2026

Respectfully submitted,

/s/ James E. Judge
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 W. Washington St., Ste. 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com

*Counsel for Uplifting Essentials LLC*